Thurman, C.J.
The decision of this ease depends upon the question whether the recorded instrument, purporting to be a deed from Owen Shannon and wife, to Ellen Shannon, was ever, in contemplation of law, delivered.
As the statute provides that copies from the records of deeds, duly certified by the recorder, and under his official seal, “ shall be received in all courts and places within this state as prima facie evidence of the existence of such deeds,” it is very clear that the record of a deed is prima facie evidence of its delivery; since, without delivery it can not exist as a deed. Swan’s Stat. (new ed.) 310, sec. 10. To the same effect are the authorities: Steele v. Lowry, 4 Ohio, 74 ; Foster’s Lessee v. Dugan, 8 Ohio, 87; Hammell v. Hammell, 19 Ohio, 18 ; Jackson v. Perkins, 2 Wend. 317; Gilbert v. N. Am. Ins. Co., 23 Wend. 46.
It is also clear that this presumption may be rebutted by proof. For the statute makes the record prima facie evidence only, for the obvious reason that it may be the result of accident, mistake, or fraud. And being the act of a mere ministerial officer, there is no reason why it should not be subject to explanation. See the cases above cited, *and also Chess v. Chess, 1 Penn. 32, and Jack- [381 son v. Schoonmaker, 4 Johns. 163.
It was therefore proper for the defendant to introduce such rebutting testimony; indeed, it was indispensable for him to do so, as the burden of proof that a recorded deed was not delivered rests upon the party attacking it.
He accordingly called Owen Shannon, the grantor, who testified as follows:
“ The grantee, Ellen Shannon, was my daughter; at time of deed to her in 1838, 2d April, she was in the east; she knew nothing of it; no consideration passed, and she never had any knowledge of tho conveyance; she was born in 1823; she was 15 years old when •tho deed was executed; she came to Ohio in a year afterward; was married in about two years after tho conveyance; at this time I was in possession, and I continued in possession until I contracted to sell tho land to Kinney; he took possession, made improvements, left and gave up his contract; then Patrick Haughran wont in /under a verbal contract with me, and made improvements ; he left; *382 I then sold it to Timothy Ryan, the defendant; he paid me $200; agreed to; that was the consideration ; Ryan never moved on to the place; Ryan agreed to sell to Duffy; the legal title is in Ryan, and he is in possession by Duffy; my daughter (Ellen) lived a mile from the place after her marriage; she died in January or February, 1852; she never had any notice of the conveyance; I sent the deed by mail from'McConnellsville to Somerset to be recorded; it came back the same way; I kept the deed until it was lost.”
Other testimony was given by the defendant tending to prove that the grantee, Ellen, knew of the control over the property exercised by her father, and of his several contracts in relation to it; and that she made no objectibn, nor assei’ted any claim; but the same testimony strongly tended to establish that she never had any knowledge of the conveyazice; nor did her husband know of it until after her death, and after the sale to Duffy. It was also 382] agreed that Owen *Shanzzon paid the taxes upon the land until he sold to Ryan. Upon this testimony, the first question for our consideration is, with what intent did Owen Shannoiz send the deed to the recorder to be recorded ? Did he thus deliver it for the use of the grantee, and to pass the title to her immediately, or had he some other izitent?
That a delivery of a deed to a stranger for the use of the grantee may be a sufficient delivezy, is well settled. 1 Shep. Touch. 57, 58; 12 Johns. 421.
But it is said in the Touchstone that if such a delivery bo made without a declaration of the use, it seems it is not sufficient. The reason of this is very obvious. If the deed be delivered to the grantee, the natural presumption is that it is for his use, and no words are necessary. But if it be handed to a stranger there is no such ziatural presumption; and hezice, unless there be something besides the znere act of delivery to evidence the intent it is impossible to say that the gz’antor designed to part with the title. For the delivery may be by mistake, or for mere safe-keeping, or for some other cause wholly independent of a purpose to transfer the estate.
But while it is thus apparent that the mere act of delivery to a stz'anger is insufficient, it is equally clear that there is no precise form of words necessary to declare the intent. Anything that shows that the delivery is for the use of the grantee is e'nough. For the real question is, does the grantor by his act mean to part *383 with his title ? and whatever satisfactorily manifests this design is as good as an explicit declaration. Now it does seem to us that when a man executes and acknowledges a deed and delivers it to the recorder, with unqualified instructions to record it, as was done in the present case, the reasonable presumption, in the absence of any rebutting circumstance, is that he means thereby to transfer his title. And this presumption is powerfully strengthened when, as in the case before us, the grantee is a minor child of the grantor, and is at a great distance from him, so that the deed can not be delivered to her in person, *and when, too, the circumstances [383 tend to show that it is a gift, and a reasonable one, for aught that appears, for the grantor to make.
It is argued, however, that there are circumstances in proof that rebut the idea that Shannon, when ,he caused the deed to be recorded, meant to part with his title; and we are referred to his subsequent possession of the instrument, to his subsequent control of the property and contracts to sell it, and to the failure of the grantee, or her husband, to assert any claim to the land before the commencement of this suit.
As to the last circumstance, it is explained by the fact that the grantee died without any knowledge of the deed; nor did her husband know anything about it until just before this suit was commenced. No inference, therefore, can be drawn from their silence. What weight, if any, should bo given to the fact that the grantor never communicated to either of them the existence of the conveyance, is another matter.
Much stress has sometimes been laid upon the fact of the grantor’s possession of a deed after an alleged delivery of it; and it has been said that such subsequent possession is a very pregnant circumstance to show that the supposed delivery was not absolute. That this may often be the case is undeniable ; but where the deed has been recorded, such subsequent possession is evidently entitled to much less consideration than where it has not. An unrecorded deed is the sole evidence of title, and it would be unsafe and altogether unusual to leave it with the grantor after its delivery. But a recorded deed is not the solo evidence. The statute makes the record also proof, and a copy of it is admissible, even though the party offering it has the deed itself in his possession. Hence, with us, people have been proverbially careless about their deeds after they are recorded, and often, if not generally, seem to attach *384, 385 more importance to the record than to the original. Add to this that the grantor, Owen Shannon, was the father of the grantee, 384] Ellen; that *she was a minor, and away from home several hundred miles when the deed was recorded, and that she remained away for about a year, and it seems to us that but little, if any, importance ought to be attached to his subsequent possession of the instrument. He was her natural guardian, and there was nothing strange in his having the custody of whajt belonged to her, even though it was a deed in which he was the grantor.
Waiving the question, whether the subsequent acts of ownership, exercised by Owen Shannon, in respect to the land, and his failure to communicate the existence of the deed to his daughter, are admissible evidence to prove that it was not his design to transfer the title to her when he caused the instrument to be recorded, wo are inclined to the opinion, after a consideration of the whole ease, that the testimony rather tends to prove a change of his mind subsequent to the delivery to the recorder, than to establish that it was not then his purpose to convey the estate. If it had been his purpose when he made the delivery, to retain any control over the property, it is reasonable to suppose he would have declared such purpose to some one; if not'to the recorder, at least to some member of his family, or to some friend. He was aware that by causing the deed to be recorded, ho would, prima facie, bo divested of his title, and it is not very reasonable to suppose that he would make such a prima facie case against himself, without taking some precaution to enable him to rebut it, if he did not mean to do what his act purported. But this is not all. He was called as a witness, and testified. When he did so, he had the strongest motives to state that he did not mean, by the execution and recording of the deed, to part with his title. Por he had subsequently conveyed the land to Ryan with warranty, and if he made that conveyance willfully and corruptly, knowing that he had no title, he committed no loss than a penitentiary offense. Yet he uttered not one word to explain the intention with which he sent the deed to the recorder. 385] Nor did the defendant venture, so far as ^appears, to put a question to him touching his intent. Why this silence of both witness and party? Why this failure to prove what the interest of both required to be proved ? Why this neglect to make a successful defense? It seems to us there is but one answer we are authorized to give to these questions, and that is, that the question *386 was not asked, because the answer would have been unfavorable, and, for the same reason, there was no unasked statement by the witness. This is the ordinary presumption where a party fails to offer proof of what he ought to prove, if it exist. It is almost incredible that, in the case before us, the defendant would fail to ask, and the witness to state, whether it was the intention to convey the land, if that intention had not in fact existed. The very object for which the witness was called was to prove that the deed was never delivered, but instead of asking him directly for what purpose he caused it to be recorded, the defendant contents himself with proving .circumstances, from which he asks the court to infer the purpose.
We suppose the truth to-be, that the deed was sent to the recorder to be recorded in order to vest the title in the grantee, and make the property hers; but, that afterward, the grantor changed <■ his mind, and concluded not to give it to her. And, it is altogether probable, assuming the deed to be a gift, that he supposed he had a right to revoke it. This view reconciles his conduct perfectly, without imputing to him any wrong motive at any time, and it is the only view that, upon the testimony, we feel at liberty to take.
And here I would remark, that very clear proof ought to be made, to warrant a court in holding that a man who has executed and acknowledged a deed, and caused it to be recorded, did not mean thereby to part with his title. If such deeds could be overthrown by slight testimony, a door would be opened to the grossest fraud. The testimony should, therefore, do more than make a doubtful case. It should establish clearly, that the delivery for record was not for the use of the grantee.
*But it is urged, that even if Owen Shannon did intend to [386 part with the title, yet the delivery was insufficient, because it was never accepted, or assented to by the grantee; and it is said that every sufficient delivery includes such assent or acceptance, for no one can be made a grantee without his consent.
It is true, that judges have said, with more solemnity than I think the occasion warranted, that no one can have an estate thrust upon him against his will, and that, consequently a delivery of a deed to a stranger, for the use of the grantee, is of no effect, until assented to by the latter. How much weight this argument is entitled to, may be judged of by the fact that estates are every day thrust upon people by last will and testament; and it would certainly sound' *387 somewhat novel to say that the devises were of no effect until assented to by the devisees. If a father should die testate, devising an estate to his daughter, and the latter should afterward die without a knowledge of the will, it would hardly be contended that the devise became void for want of acceptance, and that the heirs of the devisee must lose the estate. Neither will it be denied that equitable estates are every day thrust upon people by deeds, or assign'ments, made in trust for their benefit, nor will it be said that such beneficiaries take nothing until they assent. Add to these the estates that are thrust upon people by the statute of -descent, and we begin to estimate the value of the argument, that a man shall not be made a property holder against his will, and that courts ’should be astute to shield him from such a wrong.
It is certainly true, as a general rule, that acceptance, by the grantee, is necessary to constitute a good delivery, for a man may .'refuse even a gift. But that such acceptance need not be manual is equally true, and it is also certain that simple assent to the conveyance, given even before its execution, is a sufficient acceptance.' Thus, where a vendee had fully paid for the land and was entitled to a conveyance, and his vendor, without his knowledge, executed 387] the deed *and delivered it to a stranger, not of the vendee’s appointment, for the use of the latter, it was held that the delivery was sufficient and the deed took effect immediately, although the vendee was wholly ignorant of what was done. Church v. Gilman, 15 Wend. 656. So, patents for the public lands are held to take effect as soon as issued, though they may never come to the grantee’s hands, and were issued without any specific application for them.
But the cases go still further, and, upon the soundest reasons, hold that where a grant is plainly beneficial to the grantee, his acceptance of it is to be presumed in the absence of proof to the contrary.
It is argued, however, that this is only a rule of evidence, and that where the proofs show that the grantee has never had any knowledge of the conveyance the presumption is rebutted.
If this argument were limited to cases in which an acceptance of the grant would impose some obligation upon the grantee, I am not prepared to say that I would object to ir, although the obligation might fall far short of the value of the grant. But where the grant is a pure, unqualified gift, I think the true rule is that the *388 presumption of acceptance can be rebutted only by proof of dissent ; and it matters not that the grantee never knew of the conveyance, for as his assent is presumed from its beneficial character, the presumption can be overthrown only by proof that he did know of and rejected it. If this is not so, how can a deed be made to an infant of such tender years as to be incapable of assent? Is it the law that if a father make a deed or gift to his infant child, and deliver it to the recorder to be recorded for rhe use of the child, and to vest the estate in it, the deed is of no effect until the child grow to years of intelligence and give its consent? May the estate, in the meantime, be taken for the subsequently contracted debts of the father, or will the statute of limitations begin to run in favor of a trespasser upon the idea th at the title remains in the adult ? Or, will the conveyance entirely fail, if either ^grantor or grantee die [388 before the latter assent ? I do not so understand the law. In such a case, the acceptance of the grantee is a presumption of law arising from the beneficial nature of the grant, and not a mere presumption of an actual acceptance. And for the same reason that the law makes the presumption, it does not allow it to be disproved by anything short of actual dissent.
I am fully aware that these views may seem opposed to many decided cases, but they are fully sustained by others that stand, in our judgment, upon a more solid foundation of reason. The strictness of the ancient doctrine, in respect to the delivery of deeds, ha,s gradually worn away until a doctrine more consistent with reason and the habits of the present generation now prevails. Snider v. Lachenour, 2 Ired. Eq. 360; Ellington v. Currie, 5 Ired. Eq. 21; Church v. Gilman, 15 Wend. 656; Tate v. Tate, 1 Dev. & Bat. Eq. 26 ; Monon v. Alexander, 2 Ired. Law, 392.
It remains to be considered whether the deed in question was of that beneficial nature to the grantee, as to give rise to the presumption of which I have spoken.
Upon its face it purports to be for a pecuniary consideration paid to the grantor. Prima facie, therefore, it was neither a gift nor advancement. But the proof satisfies us that the grantor never received or expected any pecuniary consideration for it. If he intended that his daughter should have the land, he intended it as a gift. I have already said that upon the testimony we feel bound to say that he did intend to convey it to her, and we must therefore consider the deed as a gift. Applying, then, the principles we have *389 recognized, the title vested in Ellen Shannon when Owen Shannon caused the deed to be recorded. She was seized of it during her intermarriage with the lessor of the plaintiff, there was an issue Of the marriage, and she died before the commencement of this Suit. According to the decision in Borland’s Lessee u.- Marshall, 2 Ohio St. 308, the lessor of the plaintiff became tenant by the curtesy, even if the lands were adversely held during the coverture. It follows that the plaintiff is entitled to judgment.